Thomas G. Williams filed a complaint in the Circuit Court of Shelby County, on October 20, 1999, against Skysite Communications Corporation; U.S. Digital Satellite, Inc., a/k/a U.S. Digital Satellite Group d/b/a International Satellite Group, Inc.; and some fictitiously named defendants. Williams amended his complaint to substitute U.S. Digital Communications, Inc., for one of the fictitiously named defendants. It is undisputed that Skysite Communications Corporation and International Satellite Group, Inc., were subsidiaries of U.S. Digital Communications, Inc. (hereinafter referred to collectively as "Skysite"), until the subsidiaries ceased operations on June 8, 1999. Further, Skysite was in the business of providing remote and mobile communication applications, such as satellite telephone services and other means of global communication to commercial markets. The parent corporation, U.S. Digital Communications, Inc., continues to provide remote and mobile communication applications. In his complaint, Williams seeks damages based on the breach of an employment contract he entered into with Skysite.
On December 10, 1999, Williams filed an application for default judgment; the trial court entered a default judgment on December 16, 1999. Skysite answered Williams's complaint on January 7, 2000, preserving the Rule 12(b), Ala.R.Civ.P., defenses in his answer, and filed a motion to set aside the default judgment. After conducting a hearing on the motion, the trial court granted Skysite's motion to set aside the default judgment. Skysite filed a motion to dismiss, pursuant to Rule 12(b), on January 27, 2000. This motion claimed lack of jurisdiction and improper venue, asserting that Skysite had insufficient contacts with the State of Alabama to make it subject to the jurisdiction of Alabama courts. In support of its motion to dismiss for lack of personal jurisdiction, Skysite submitted the affidavit of Robert Wussler, the chairman and chief executive officer of U.S. Digital Communications, Inc., the parent corporation of Skysite. The affidavit states that Skysite is not an Alabama corporation; that it does not maintain a principal place of business or office in the State of Alabama; that it has never qualified to do business as a foreign corporation in the State of Alabama; that it does not solicit or transact business, by agent or otherwise, in the State of Alabama; that it never entered into any contract to conduct business with any other company within the State of Alabama; that it has not initiated any contract to supply goods or services within the State of Alabama; that it has not deliberately targeted Alabama as a market; that it does not lease any building or own any property in the State of Alabama; and, that it does not engage in any type of persistent course of conduct in the State of Alabama. In response to Skysite's motion to dismiss, Williams filed a motion to strike the affidavit of Wussler and a motion in opposition to Skysite's motion to dismiss.
In support of his position that Skysite has sufficient contacts to subject it to the jurisdiction of an Alabama court, Williams filed three affidavits in support of his opposition to Skysite's motion to dismiss. In his own affidavit, Williams states that he currently resides in Shelby County, Alabama, *Page 244 
and that he resided there throughout his contract negotiations with Skysite; that the principals of Skysite, namely Charles C. Maynard, former CEO of Skysite, and Phillip A. Kernan, Jr., former president of Skysite, contacted him concerning his employment with Skysite; that he had numerous telephone conversations with Kernan regarding his possible employment with Skysite, the majority of those calls being made to him at his Shelby County, Alabama, residence; that on or about August 21, 1998, he left his employment with BellSouth Telecommunications, Inc., and entered into an employment contract with Skysite Communications Corporation to serve as national managing director of the corporation; that the contract was sent to him at his Shelby County, Alabama, home where he reviewed and executed it and returned it to Kernan via U.S. Mail; that he had numerous conversations with Mr. Remington Dean at SONAT, Inc., an Alabama corporation, concerning SONAT's satellite communication needs and the possibility of Skysite providing for those needs; that he solicited business from SONAT on behalf of Skysite; that he supported Jim Travis, Skysite's regional vice president of sales for the southeastern region, and the southeastern regional sales office by providing them with information about his negotiations with SONAT; and that Skysite encouraged solicitation of business in all 50 states, including Alabama.
The affidavit of Charles C. Maynard, the former chief executive officer of Skysite, states that Williams was hired as the national managing director of Skysite and that, even though Skysite's principal place of business was California, Williams was not hired to merely run the California office. Further, the affidavit states that as part of Williams's employment, Skysite agreed to allow him to work from his Shelby County, Alabama, home one week per month. As part of that arrangement, Skysite paid for Williams's home-office equipment and expenses, provided him with an apartment in California, and paid all of his travel expenses to and from Alabama. Williams also testified that Skysite paid for these expenses and attached documentation of these expenses to his affidavit. Maynard testified that because the company focused on selling satellite communications to companies on a national scope, it had several regional offices, including one in Atlanta, Georgia, that covered the southeastern region. This office serviced Alabama.
Jim Travis further summarized Skysite's contacts with Alabama in his affidavit. Travis's affidavit indicated that he supervised five sales representatives whose sales territory included Alabama; that his duties included direct sales to businesses located within Alabama; that his sales representatives solicited business from companies in Alabama; that one of his sales representatives, Blake Dexter, called on two Alabama customers on several occasions, with one of those customers being SONAT, Inc.; and that even though his sales representatives solicited business in Alabama, no contracts were procured because Skysite ceased doing business early in negotiations.
After conducting a hearing on the motion to dismiss, the trial court, on February 14, 2000, entered an order dismissing Skysite on the grounds of lack of personal jurisdiction. The trial court found that, even without the affidavit of Wussler, sufficient information existed to conclude that Alabama lacked jurisdiction over Skysite.
Williams filed a motion to alter, amend, or vacate the judgment on February 24, 2000; the trial court denied that motion on April 4, 2000. Williams appealed to the Supreme Court of Alabama, which *Page 245 
transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
We must first consider the proper standard of review with respect to the trial court's judgment. Williams raises this issue and claims that the underlying motion to dismiss should be converted into a motion for summary judgment because of Skysite's inclusion of an affidavit with its motion.
We are not persuaded by Williams's argument that the fact that Skysite's motion to dismiss was supported by an affidavit converts that motion into a summary-judgment motion. Evidentiary matters may be freely submitted on a motion to dismiss that attacks jurisdiction. Committee Comments, Rule 12, Ala.R.Civ.P. (citing Williams v. Minnesota Mining Mfg Co., 14 F.R.D. 1 (S.D.Cal. 1953)). Furthermore, this court has held
 "[T]he submission and consideration of affidavits or other evidence in connection with a motion to dismiss that states grounds other than a failure of a pleading to state a claim does not result in automatic conversion:
 "`Most courts now . . . permit "speaking" motions under Rule 12(b). There is little difficulty in allowing these motions in conjunction with the defenses enumerated in Rules 12(b)(1) to 12(b)(5). The validity of these defenses rarely is apparent on the face of the pleading and motions raising them generally require reference to matters outside the pleadings. The practice of allowing "speaking motions" in connection with the Rule 12(b)(1) through Rule 12(b)(5) defenses has not been compromised by the fact that the 1948 amendment to Rule 12(b) only expressly permits the use of extraneous matter on a Rule 12(b)(6) motion. Finally, the defense described in Rule 12(b)(7), failure to join a party under Rule 19, . . . is analogous to the defenses in Rules 12(b)(1) through Rule 12(b)(5) and also may be supported by affidavits or other evidence.'
Crowe v. City of Athens, 733 So.2d 447, 449 n. 1 (Ala.Civ.App. 1999) (quoting Charles A. Wright Arthur R. Miller, Federal Practice Procedure, § 1364 pp. 468-70 (2d. ed. 1990)).
Skysite challenged personal jurisdiction, venue, and sufficiency of process in its motion to dismiss. Skysite did not, under subdivision (b)(6) of Rule 12, Ala, Civ. P., allege that Williams had failed to state a claim upon which relief could be granted Therefore, its motion to dismiss is not to be treated as one for summary judgment and disposed of as provided in Rule 56, Ala.R.Civ.P.
We review the trial court's judgment de novo. Our review in this case is to determine whether the trial court correctly applied the law to the facts of this case. Sims v. Leland Roberts Constr., Inc., 671 So.2d 106
(Ala.Civ.App. 1995).
The determination of whether a court has personal jurisdiction over a nonresident defendant must be made on consideration of all the relevant facts and circumstances in the particular case. Gunaca v. Prime, Inc.,717 So.2d 811, 812 (Ala.Civ.App. 1998) (citing Ex parte MONY Fed. CreditUnion, 668 So.2d 552, 554-55 (Ala. 1995)).
Rule 4.2(a)(2)(A)-(I), Ala.R.Civ.P., set forth the contacts with this state that will be sufficient to form the basis for in personam jurisdiction over a nonresident. This rule is Alabama's equivalent of a "long-arm statute," and its reach has been held to extend to the limits permitted by the constitutional requirement of due process. AlabamaWaterproofing Co. v. Hanby, 431 So.2d 141, 145 (Ala. 1983). *Page 246 
Subdivisions (2)(A)-(H) state certain activities that constitute "contacts" with Alabama that are "sufficient" to subject a foreign corporation or nonresident individual to a lawsuit and to in personam jurisdiction within Alabama. See Committee Comments, Rule 4.2, Ala.R.Civ.P. Subdivision (I), a catchall provision, allows Alabama courts to exercise jurisdiction over a person who otherwise has with Alabama "some minimum contacts" that make it "fair and reasonable" to subject the person to a lawsuit in this state. Rule 4.2, Ala.R.Civ.P. provides, in pertinent part:
"(a) Basis for Out-of-State Service.
 "(1) When Proper. Appropriate basis exists for service of process outside of this state upon a person in any action in this state when
". . . .
 "(B) the person has sufficient contacts with this state, as set forth in subdivision (a)(2) of this rule, so that the prosecution of the action against the person in this state is not inconsistent with the constitution of this state or the Constitution of the United States. . . .
 "(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
"(A) transacting any business in this state;
". . . .
 "(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States.
 "(3) `Person' Defined. This term `person' as used herein includes . . . a corporation. . . ."
Our supreme court has stated that to properly analyze the limits of due process "we must necessarily examine all relevant facts and attendant circumstances of the case." Shrout v. Thorsen, 470 So.2d 1222, 1224
(Ala. 1985). "There must be a clear, firm nexus between the acts of the defendant and the consequences complained of in order to establish the necessary contacts." Duke v. Young, 496 So.2d 37, 39 (Ala. 1986). Alabama courts use a twofold analysis to determine whether personal jurisdiction exists over a nonresident defendant: "1) the determination of whether it is foreseeable to that nonresident defendant that he will be sued in this state; and 2) the determination of the degree of contact that the nonresident defendant has with this state." Kittle HeavyHauling v. Gary A. Rubel, Inc., 647 So.2d 743, 744 (Ala.Civ.App. 1994).
Our supreme court has noted, "`Few Alabama cases have specifically addressed the issue of what contact will subject a defendant to the general jurisdiction of this state's courts, and those that have done so have focused on the activities of corporations seeking to avail themselves of profit in this state.'" Ex parte Kamilewicz, 700 So.2d 340,344 (Ala. 1997) (quoting Ex parte United Bhd. of Carpenters, 688 So.2d 246,251 (Ala. 1997)).
There must be some contact with the state that results from an affirmative act of the defendant. Committee Comments, Rule 4.2, Ala.R.Civ.P. The record contains evidence indicating that Skysite *Page 247 
initiated contact with Williams and solicited his employment. Williams's affidavit indicates that he was employed by BellSouth when Skysite began recruiting him. Furthermore, the affidavit of Maynard supports Williams's testimony concerning who initiated contact. The record indicates that agents of Skysite contacted Williams by telephone. After numerous telephone conversations, Williams decided to leave his employment with BellSouth and begin employment with Skysite. In Kittle Heavy Hauling v.Rubel, supra, this court held that an Ohio corporation's telephone call to someone in the State of Alabama to arrange for the movement of heavy equipment and for the obtaining of a necessary license to facilitate that movement was insufficient to create the contact needed for an Alabama court to exercise personal jurisdiction. However, in Kittle HeavyHauling, the only contact that the foreign corporation had with this state was a single telephone call. Id. Likewise, the Alabama Supreme Court has held that the use of an interstate facility (i.e., a telephone system) is an ancillary factor and does not, alone, provide the requisite minimum contacts. Steel Processors, Inc. v. Sue's Pumps, Inc. Rentals,622 So.2d 910 (Ala. 1993). Williams testified that agents of Skysite contacted him numerous times by telephone and by fax both before and during his employment.
An employment contract was sent to Williams memorializing the telephone conversations. Williams executed the employment contract in Shelby County, Alabama, and returned it via U.S. mail to Skysite in California. In Steel Processors, Inc. v. Sue's Pumps, Inc. Rentals, 622 So.2d 910,913 (Ala. 1993) (citing McGee v. International Life Ins. Co., 355 U.S. 220,223 (1957)), the court determined that it is sufficient for purposes of due process that the action was based on a contract that had substantial connections with the state in which the action was filed. The record reflects that Skysite solicited Williams's employment and requested that he work for it in California and that he help to facilitate its move to the East Coast. Skysite did not require Williams to move to California, because of the upcoming relocation of its corporate offices. Many of the contract negotiations were conducted via telephone. Also, the record reflects that Skysite allowed Williams to work from his home in Alabama on occasion, as an inducement for him to work for it.
In Johnston v. Frank E. Basil, Inc., 802 F.2d 418 (11th Cir. 1986), the court found that the employment contracts at issue were executed in states other than Alabama and that the alleged breach occurred outside Alabama. The court concluded that "an advertisement in an Alabama newspaper offering employment opportunities to qualified applicants, said employment to be performed entirely outside Alabama, . . . does not satisfy the principles espoused by the Supreme Court or the requisites of due process. Such activities do not fall within the realm of purposeful availment of the benefits and protections of Alabama laws." 802 F.2d at 420. In distinguishing Johnston, as applied to the case at bar, this court concludes that the employment contract now in question was executed in Alabama, that the employment was not performed entirely outside Alabama, and that the alleged breach did not occur entirely outside Alabama.
Initially very few of Williams's responsibilities concerned Alabama, because Williams spent most of his time in California while he was employed by Skysite, spending only weekends and approximately one week a month in Alabama. However, Williams testified that from his home office in Alabama he reviewed office files, made telephone calls, and carried on correspondence *Page 248 
relating to Skysite's business. However, Wussler testified that Williams was never authorized to manage Skysite's office from his Alabama residence. But, Williams attached his expense reports to his affidavit and Maynard corroborated Williams's testimony by stating in his affidavit that part of Williams's employment package was that he was allowed to work from his home one week per month. Skysite paid Williams's home-office expenses, as well as his travel expenses to and from Alabama. See Perkins v. Benguet Consol. Mining Co., 342 U.S. 437
(1952) (the Supreme Court found personal jurisdiction when the president of the company opened a home office and conducted business affairs from that office when the company's mining properties where located in the Philippine Islands).
Furthermore, Williams made several business contacts in Alabama on behalf of Skysite that were never finalized because Skysite ceased operating before contracts were procured. Williams negotiated with two Alabama companies specifically on behalf of Skysite before operations ceased and his employment with Skysite was terminated. Jim Travis's affidavit supports Williams's contention that Skysite encouraged solicitation of business in Alabama.
These contacts, considered together, are sufficient to support an Alabama court's exercise of personal jurisdiction over Skysite. By contacting Williams, without any solicitation by Williams, and by encouraging its agents to solicit business in all 50 states, Skysite purposefully availed itself of the privileges of conducting business within Alabama. See Hanson v. Denckla, 357 U.S. 235, 253 (1958) (stating that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State").
The employment contract in this case contains a choice-of-law clause providing that the laws of California "shall govern the employment relationship between Skysite and its employees." However, nothing in the clause requires that any action involving the parties be filed in California. Because Skysite drafted the clause, together with the entire contract containing the clause, we must construe the contract against Skysite. See Premiere Chevrolet, Inc. v. Headrick, 748 So.2d 891 (Ala. 1999); Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869 (Ala. 1999); and Jewell v. Jackson Whitsitt Cotton Co., 294 Ala. 112, 313 So.2d 157
(1975). Given this construction of the contract, Skysite could not require Williams to litigate dispute over this contract in California.
In view of the authorities noted above and given the facts and circumstances of this case, we conclude that Skysite's contacts with this state were sufficient to subject Skysite to in personam jurisdiction of Alabama courts, under the provisions of Rule 4.2(a)(2)(A), Ala. Code 1975. The evidence presented by Williams concerning Skysite's solicitation of his employment, the numerous telephone calls made to him while he was in Alabama, and the fact that he often worked from his home and that Skysite paid for his expenses, as well as the business contacts Williams made in Alabama on behalf of Skysite, establishes sufficient contacts to subject Skysite to jurisdiction in Alabama.
Additionally, even if an employment contract failed to exist between Skysite and Williams evidencing a business transaction in this state subjecting it to in personam jurisdiction of Alabama courts under Rule 4.2(a)(2)(A), we would conclude that the evidence indicated contacts sufficient to *Page 249 
subject Skysite to in personam jurisdiction under Rule 4.2(a)(2)(I).
Skysite had sufficient contacts with Alabama to subject it to in personam jurisdiction of Alabama courts. There is a firm nexus between Skysite's actions and the claims alleged in Williams's complaint. Considering the nature of Skysite's activities, Skysite should have reasonably foreseen that it might be required to defend an action in Alabama. Therefore, we reverse the trial court's dismissal of Williams's complaint for lack of personal jurisdiction and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Robertson, P.J., and Yates and Monroe, JJ., concur.
Crawley, J., concurs in the result.