Katherine GRIFFIS, Respondent,

v.

Marianne LUBAN, Appellant.

No. C3–01–296.

Court of Appeals of Minnesota.

Sept. 11, 2001.

Peter Erlinder, St. Paul, MN, (admitted pro hac vice); and Ralph Overholt, Hopkins, MN, (for respondent).

John P. Borger, C. David Flower, Faegre & Benson, Minneapolis, MN, (for appellant).

Considered and decided by WILLIS, Presiding Judge, HALBROOKS, Judge and PARKER, Judge.*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## OPINION

HALBROOKS, Judge.

Respondent Katherine Griffis obtained a default injunction in a defamation action against appellant Marianne Luban in Alabama and sought to enforce it in Minnesota. The district court found that Alabama's long-arm statute permitted the exercise of personal jurisdiction over appellant. The court, therefore, concluded that it must give full faith and credit to the Alabama decision. Appellant contends that she did not have minimum contacts with Alabama and was not constitutionally subject to personal jurisdiction there, and that the injunction issued by the Alabama court was inequitable and in violation of the First Amendment's prohibition against prior restraint. Because the district court properly found that Alabama could exercise personal jurisdiction over appellant, we affirm. But because the issue of whether the injunction violates the First Amendment was not addressed by the district court, we reach no conclusion on that issue.

## FACTS

This case originally came before this court on the procedural issue of whether entering a judgment was illegal when it was based on a referee's decision without countersignature or review by a judge. *Griffis v. Luban,* 601 N.W.2d 712, 714 (Minn.App.1999). Because this court vacated the judgment, it declined to reach the merits of the claim. *Id.* at 716.

Respondent Katherine Griffis is a resident of Alabama. She teaches noncredit courses in ancient Egyptian history and culture at the University of Alabama at

Minn. Const. art. VI, § 10.

Birmingham, and she is also a self-employed consultant on museums, international protocol, grant-development activities, and other matters. Respondent frequently uses the internet to communicate with clients and other business contacts and to solicit prospective clients.

Both respondent and appellant Marianne Luban, a Minnesota resident, participated in an internet newsgroup on archeology. A newsgroup addresses a specific topic and allows anyone with an interest in the topic to "chat," or to exchange information and engage in discussions or debates by posting messages on a website. It is unclear from the record who or what organization maintained this newsgroup.

A dispute arose between respondent and appellant over the topic of Egyptology. In December 1996, appellant posted a message challenging respondent's credentials as an Egyptologist and alleging that respondent had received her degree from a "Cracker Jack box." Respondent responded to the posting by citing her professional credentials in a private e-mail to appellant, and the University of Alabama posted a message verifying that respondent had taught noncredit courses in Egyptian history and culture in the university's special-studies department since 1980. Appellant continued posting messages that disputed respondent's credentials and accused her of being untruthful.

In May 1997, respondent's attorney sent appellant a letter stating that respondent had obtained legal representation "to put a stop to [appellant's] periodic attacks on [respondent's] character and professional reputation." The attorney demanded that appellant refrain from making future attacks against respondent and retract any and all false statements. Appellant was advised that failure to comply would result in legal action. Appellant continued her postings, and it is estimated that between

December 1996 and June 1998, appellant posted to the chat line approximately 100 derogatory messages about respondent.

In October 1997, respondent brought a defamation claim against appellant in Alabama state court. Appellant did not answer the complaint or make any appearance in the Alabama action, and respondent obtained a $25,000 default judgment against appellant. Respondent also obtained an injunction prohibiting appellant from asserting or implying that respondent misrepresented her credentials. After respondent filed the Alabama judgment in Ramsey County District Court, appellant moved to vacate the Alabama judgment on the ground that the Alabama court lacked personal jurisdiction over her.

On May 15, 2000, a hearing was held in district court. Appellant reiterated her argument that Alabama lacked personal jurisdiction and, therefore, the default judgment could not be enforced in Minnesota. Appellant also argued that the injunction violated the First Amendment. The district court found that the Alabama court had personal jurisdiction over appellant and, therefore, the judgment must be given full faith and credit. The court did not make any findings or legal conclusions on the First Amendment issue. This appeal follows.

### ISSUES

I. Did Alabama have personal jurisdiction over appellant?

II. Does the injunction violate the First Amendment?

### ANALYSIS

### I.

Whether personal jurisdiction exists is a question of law and, therefore, our review is de novo. *State Inc. v. Sumpter*

*& Williams*, 553 N.W.2d 719, 721 (Minn. App.1996). "If the defendant does not appear in the foreign proceedings and does not litigate the issue of personal jurisdiction, the foreign judgment does not have res judicata effect on that issue." *Corsica Cheese, Inc. v. Roers Enters., Inc.*, 389 N.W.2d 751, 753 (Minn.App.1986) (citation omitted).

■■■ Under the Uniform Enforcement of Foreign Judgment Acts, Minn.Stat. § 548.27 (2000), Minnesota will not give full faith and credit to a foreign court's judgment if that court lacks proper personal jurisdiction. *Electro–Measure, Inc. v. Ewald Enters., Inc.*, 398 N.W.2d 85, 88 (Minn.App.1986), *review denied* (Minn. Mar. 13, 1987). To acquire personal jurisdiction, the foreign court must comply with its own state's laws regarding jurisdiction and with the Due Process Clause of the United States Constitution. *S.V. Mgmt. Co. v. Ellis*, 472 N.W.2d 674, 676 (Minn. App.1991), *review denied* (Minn. Sept. 13, 1991). In determining whether the foreign court properly obtained personal jurisdiction, this court must apply the law of the foreign state as construed by the courts of that state. *Id.*

We recently addressed whether Minnesota courts could exercise personal jurisdiction over a foreign resident who made a defamatory statement regarding a Minnesota corporation over the internet. *N.W. Airlines, Inc. v. Friday*, 617 N.W.2d 590 (Minn.App.2000). Our holding that personal jurisdiction did not exist turned on a specific provision in Minnesota's long-arm statute, which limits the statute's reach over defamation claims. *Id.* at 593 (discussing Minn.Stat. § 543.19, subd. 1(d)(3) (2000)).

■■■ But jurisdiction here turns on Alabama's long-arm rule, and it does not have a special exclusion for defamation.[1] The reach of the Alabama long-arm rule over a nonresident defendant extends to the permissible limits of due process under the Fourteenth Amendment. *Lowry v. Owens*, 621 So.2d 1262, 1264 (Ala.1993). Therefore, our inquiry concerns constitutional, not statutory, principles—whether Alabama can exercise personal jurisdiction over appellant without violating the Due Process Clause.

■■■ To satisfy due process requirements, the nonresident defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Larson v. Dunn*, 460 N.W.2d 39, 43 (Minn. 1990) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted)) (alteration in original). In determining what constitutes minimum contacts, a district court must focus on "the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (quotation omitted). "This relationship is

---

1. Alabama does not have a long-arm statute; its rules of civil procedure provide an equivalent legal basis. *Williams v. Skysite Communications Corp.*, 781 So.2d 241, 245 (Ala.Civ. App.2000). The jurisdictional rule provides that an

[a]ppropriate basis exists for service of process outside of this state upon a person in any action in this state when
(A) the person is, at the time of the service of process, either a nonresident of this state or a resident of this state who is absent from the state, and
(B) the person has sufficient contacts with this state * * * so that the prosecution of the action against the person in this state is not inconsistent with the constitution of this state or the Constitution of the United States * * *.

Ala. R. Civ. P. 4.2(a)(1).

defined by the defendant's contacts with the forum state, not with its residents." *Larson v. Dunn*, 449 N.W.2d 751, 759 (Minn.App.1990), *aff'd*, 460 N.W.2d 39 (Minn.1990).

■ The Alabama courts have construed the minimum-contacts requirement to mean that "[t]here must be some contact with the state that results from an affirmative act of the defendant." *Williams*, 781 So.2d at 246 (citing Ala. R. Civ. P. 4.2 comm. cmt.). Similarly, we have found that a single act may be enough to establish personal jurisdiction, but if jurisdiction is based on such a singular occurrence, the nature and quality of the contact becomes dispositive. *Johnson v. Sel-mor Distrib. Co.*, 430 N.W.2d 495, 497 (Minn.App.1988), *review denied* (Minn. Dec. 21, 1988). For example, a single telephone call is unlikely to constitute sufficient contact. *Kittle Heavy Hauling v. Gary A. Rubel, Inc.*, 647 So.2d 743, 744 (Ala.Civ.App.1994) ("The use of an interstate facility (i.e., telephone) is an ancillary factor and does not, alone, provide the requisite minimum contacts." (citation omitted)). The unilateral activity of one party claiming a relationship with a nonresident party will not satisfy the requirement of minimum contacts with the forum state. *Id.* (relying on *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

■ In reviewing the district court's determination, we find *Calder v. Jones* especially instructive. In that case, the Supreme Court held that personal jurisdiction properly could be exercised over nonresident media when the effects of their intentional conduct were felt in the forum state. *Calder*, 465 U.S. at 787 n. 6 & 790, 104 S.Ct. at 1485 n. 6 & 1487. The plaintiff was a California resident and the subject of an article in a national newspaper. *Id.* at 785, 104 S.Ct. at 1484.

In addition to suing the newspaper, she also named the article's author and its editor as defendants. *Id.* Because they lived and worked in Florida, the employees argued that they could not be haled into a California court as they had "no direct economic stake in their employer's sales in a distant State. Nor are ordinary employees able to control their employer's marketing activity." *Id.* at 789, 104 S.Ct. at 1487.

The Supreme Court rejected the employees' arguments, finding that their lack of an economic contact with California was irrelevant. *Id.* Such contact might be meaningful in a case alleging negligence, but here, the employees were being accused of an intentional tort that was aimed at the forum state. *Id.* The employees prepared

an article that they knew would have a potentially devastating impact upon [the plaintiff]. And they knew that the brunt of that injury would be felt by [the plaintiff] in the State in which she lives and works and in which [their employer] has its largest circulation. Under the circumstances, [the employees] must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.

*Id.* at 789–90, 104 S.Ct. at 1487 (quotations omitted).

Likewise, we agree with the district court in holding that, consistent with the Fourteenth Amendment, Alabama could exercise personal jurisdiction over appellant. First, appellant should have foreseen that she might be sued in Alabama because she had actual knowledge of the effect that her messages were having in

Alabama. The messages appellant posted directly attacked the professional credentials of respondent and were related to her employment in Alabama.

Appellant contends that she lacked actual knowledge because she did not know that respondent lived in and worked from Alabama. But this statement rings false. On December 23, 1996, the University of Alabama posted information about respondent's relationship with the university. The district court found that this verification of respondent's employment indicated that appellant's postings were reaching Alabama and affecting respondent's professional standing in Alabama. Additionally, the May 20, 1997 letter from respondent's attorney to appellant stated that appellant's accusations impugned respondent's professional reputation and threatened her business. Despite being warned that her actions were affecting respondent, appellant continued to make postings.

Second, appellant made multiple contacts with the foreign state. We have previously dismissed defamation claims for want of personal jurisdiction where the defendant had no connection with Minnesota. *E.g., Johnson*, 430 N.W.2d at 498 (holding a Wisconsin corporation that was not licensed to conduct business in Minnesota and had sporadic business dealings with Minnesota companies did not have sufficient minimum contacts). While we agree with appellant that she had no economic contacts with Alabama, we disagree that she did not establish a connection with that state. Appellant repeatedly made postings, even after she was threatened with legal action. Although the postings were not made in Alabama, these repeated messages could be—and were—received in Alabama. Just as the employees in *Calder* were aware that their article would be carried outside their home state's boundaries, appellant wrote messages that she knew would be read in a foreign state. She was also aware that her messages were causing damage in Alabama. Although a Minnesota resident, appellant should have realized that by making potentially defamatory statements that were being read in Alabama, she could be haled into court in Alabama to prove the truth of those statements. Therefore, we agree with the district court that the Alabama court had personal jurisdiction over appellant.

## II.

Appellant also argues that the injunction violates the First Amendment. Because of this alleged illegality, appellant argues that the district court erred when it found in favor of respondent. The First Amendment plays no role in the jurisdictional analysis. *Calder*, 465 U.S. at 790, 104 S.Ct. at 1487. This issue, however, is not properly before us in the context of this appeal from the order and judgment from December 2000.

## DECISION

The district court did not err in determining that the Alabama court had personal jurisdiction over appellant. The issue of whether the injunction violates the First Amendment is not before this court in this appeal.

**Affirmed.**